NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3079
_____

UNITED STATES OF AMERICA

v.

ERIC GRANT,
                    Appellant


_____


On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2:09-CR-00337-001)
District Judge:  Hon. John R. Padova
_____


Submitted Under Third Circuit L.A.R. 34.1(a),
January 9, 2012

BEFORE:  FUENTES, JORDAN, and NYGAARD, *Circuit Judges*

(Opinion Filed: January 26, 2012)
_____

OPINION OF THE COURT
_____


FUENTES, *Circuit Judge*.

    Appellant Eric Grant appeals the District Court's Order denying his motion to

suppress a gun on the basis that he was improperly seized under the Fourth Amendment.

1

Because we find that he was not seized under the Fourth Amendment, we will affirm the District Court.[1]

I.

Because we write only for the parties, we discuss only those facts necessary to our decision.

On March 18, 2009, Philadelphia Police Officers Robert McCarthy and Michael Hand were driving in a marked police car when they received a radio call stating that there was a person with a gun near a large fight occurring at the intersection of Ninth and Huntingdon Streets in Philadelphia, a high crime area. As they arrived at the location, they observed a large crowd on the southwest corner and Grant standing by himself on the northwest corner. McCarthy observed Grant "remove his hand from his waistband and then . . . adjust[] his jacket." A-5. Based on this, McCarthy believed that Grant had tucked a handgun in his waistband. However, he did not see a gun or a bulge in Grant's pants indicating the presence of a gun. He told Hand "I think [Grant has] got a gun." A-5. The two officers angled their car the wrong way on Ninth Street, with their headlights on Grant, exited their vehicle and approached Grant. They did not draw their weapons. McCarthy shouted "Show me your hands," to which Grant responded "Who me?" and

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a District Court's grant of a motion to suppress for clear error as to the underlying facts, but review the District Court's legal conclusions de novo. *United States v. Crandell*, 554 F.3d 79, 83 (3d Cir. 2009). We construe the record "in the light most favorable to the government." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

kept his hands at his waist.[2] McCarthy then repeated the instruction. Grant took a few steps backwards, began raising or raised his hands for no more a few seconds and then turned and fled.[3] McCarthy and Hand chased Grant. McCarthy observed Grant throw an object on the ground, which McCarthy believed, based on the sound it made hitting the sidewalk, was a gun. Hand recovered an operable and loaded Smith and Wesson 9 millimeter pistol from the sidewalk.

Grant was indicted by a grand jury with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the gun, which the District Court denied after holding an evidentiary hearing. A jury found Grant guilty and the District Court sentenced him to 104 months' imprisonment. Grant timely appealed.

II.

After carefully reviewing the record and the submissions of the parties, we find no basis for disturbing the District Court's persuasive opinion and judgment.

The Fourth Amendment of the U.S. Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. An encounter between a police officer and a citizen will only trigger Fourth Amendment protections when "it loses its

---

[2] McCarthy may have also instructed that Grant "stop" as well.

[3] At trial, Grant testified to what happened after McCarthy ordered him to show his hands. He testified: "I took my hands out of my pockets . . .. [and] said '[f]or what? I didn't do nothing.' At this time like my hands was like flinging around because I was kind of like agitated . . . . So I placed my hands in the air. At this point the officer had his gun down by his waist – I mean not – down by his side and he was walking towards me. And I had my hands in the air but I started backing up, I was moving backwards like." A-288-89. He did not testify to how long this interaction occurred.

3

consensual nature." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. 2009). Thus a "seizure" for Fourth Amendment purposes occurs only when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.,* 499 U.S. 621, 628 (1991)). To trigger a "seizure" a citizen must submit to an officer's show of authority and do so beyond mere momentary compliance. *See United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000). *See also Smith*, 575 F.3d at 316 ("Two steps towards the hood of a car does not manifest submission to the police officers' show of authority").

As the officers did not use physical force until after the gun had been abandoned, Grant contends the officer's instructions to "show your hands" constituted a show of authority to which Grant complied to by raising his hands. We disagree. As the District Court determined, Grant raised his hands at practically the same time as his flight. Thus, at most, he did nothing more than momentarily comply with the officer's show of authority. This is not a "seizure" under our Fourth Amendment jurisprudence. *See Valentine*, 232 F.3d at 359. Because no Fourth Amendment seizure occurred, we do not need to consider whether the seizure was reasonable. *Smith*, 575 F.3d at 313 ("As such,

4

any seizure inquiry has two steps: Was there in fact a seizure? If so, was that seizure reasonable?").[4]

Finally, as the gun was abandoned, the District Court properly denied Grant's motion to suppress. *Hodari D.*, 499 U.S. at 629 ("The [gun] abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.")

IV.

For the foregoing reasons, we will affirm.

---

[4] Grant's testimony at trial does not change this conclusion. For even if, as he testified, he complied with the officer's instruction, he presented no evidence that he did nothing more than momentarily comply before he fled.